UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 1:10-cr-93 |
| v. | ) | |
| | ) | Sentencing: June 18, 2010 |
| ANNE MARGRETH BAKILANA, | ) | |
| | ) | Hon. Leonie M. Brinkema |
| Defendant. | ) | |

## POSITION OF THE UNITED STATES
## WITH RESPECT TO SENTENCING

The United States hereby submits its position on the sentencing of the defendant Anne M. Bakilana. According to the Presentence Report, the defendant's sentencing range is 0 to 6 months of incarceration. For the reasons stated below, the government respectfully requests that the Court sentence the defendant to a term of probation with full restitution and such other conditions of probation as the Court deems appropriate.

## BACKGROUND

The defendant, Anne Bakilana, is a Tanzanian national employed as an economist by the World Bank. Bakilana entered the United States in 2003 on a G-4 nonimmigrant visa issued to foreign officers or employees of international organizations. During 2004 to 2006 and in 2009, Bakilana employed as a domestic servant a woman identified as S.K., a Tanzanian national who entered the United States on a G-5 nonimmigrant visa issued to personal employees of G-4 visa holders.

In 2009, the government conducted an investigation into allegations that the defendant was engaged in human trafficking with respect to S.K. (in particular, forced labor in violation of 18 U.S.C. § 1589). As part of this investigation, the FBI interviewed S.K. on several occasions and provided her with audio and video equipment to record conversations between S.K. and

Bakilana. In August 2009, the FBI interviewed Bakilana in the presence of her attorney and a Department of Justice trial attorney. According to the statement of facts filed with the defendant's plea agreement, Bakilana made two false statements during this interview. First, Bakilana falsely stated that she used $3,500 collected from her then-employee, S.K., to buy property in Tanzania on S.K.'s behalf, when in fact, Bakilana had collected the money from S.K.'s account for Bakilana's own personal use and benefit. Second, Bakilana denied falsely warning S.K. that the FBI would deport S.K. out of the United States if she terminated her employment with Bakilana, when in fact, Bakilana's statement to that effect was captured during a conversation recorded by the FBI.

On March 29, 2010, the defendant pleaded guilty before this Court to a two-count criminal information charging Bakilana with knowingly making materially false statements to a federal agent in violation of 18 U.S.C. § 1001(a)(2). Although Bakilana was not charged with a human trafficking violation, the statement of facts filed with the defendant's plea agreement underscores the serious nature of the defendant's conduct.[1] As the defendant has acknowledged, "S.K. was available for work for Ms. Bakilana seven days a week" without "any overtime pay," and Bakilana "developed a scheme to prey upon S.K.'s lack of sophistication about bank accounting to obtain S.K.'s labor at a rate far below the contractually and/or legally required minimum wage rate." (Stmt. of Facts ¶¶ 8-9.) Moreover, the victim's impact statement, attached here as Exhibit A, disputes several elements of the defendant's supplemental statement of facts (Doc. 8), stating, for example, that Bakilana maintained control of S.K.'s passport,

---

[1] The government notes, moreover, that S.K. was granted continued presence in February 2010, a form of temporary immigration relief granted to a "victim of a severe form of trafficking in persons." 22 U.S.C. § 7105(b), 28 C.F.R. § 1100.35. In addition, the FBI will submit a law enforcement declaration in support of S.K.'s application for a T visa, which likewise is granted to a "victim of a severe form of trafficking in persons." 8 U.S.C. § 1101(a)(15)(T)(i), 8 C.F.R. § 214.11.

required S.K. to work overnight by sleeping in the same room as Bakilana's children, and misled S.K. about the content of key documents relating to her employment. It is this conduct that led to the government's investigation, and ultimately, the defendant's conviction for making false statements.

## ARGUMENT

A sentencing court considers both the Sentencing Guidelines and other statutorily prescribed factors. *See* 18 U.S.C. § 3553(a); *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005); *United States v. Biheiri*, 356 F. Supp. 2d 589, 593 (E.D. Va. 2005). To determine a sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *Hughes*, 401 F.3d at 546. The Guidelines assist the court by "'provid[ing] certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities.'" *United States v. Booker,* 543 U.S. 200, 264 (2005) (quoting 28 U.S.C. § 991(b)(1)(B)); *see also* 18 U.S.C. § 3553(a)(6). "Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Hughes*, 401 F.3d at 546. Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and provide the defendant with needed training or treatment. 18 U.S.C. § 3553(a).

The United States concurs in the Probation Office's Guidelines calculation. The base offense level for false statements is 6. *See* U.S. Sentencing Guidelines Manual § 2B1.1(a)(2). After a 2-level decrease for acceptance of responsibility, the total offense level is 4. The

defendant is in criminal history category I. Accordingly, the Guidelines provide for an advisory sentencing range of 0 to 6 months, which can be satisfied by a sentence of probation.

Pursuant to paragraph 4 of the plea agreement, the government agreed not to oppose a sentence of probation in this case. Such a sentence will permit the defendant to continue working and making payments towards her restitution obligation of $41,626.80, which constitutes back pay and overtime owed to S.K. In this regard, the government notes that as of this date, the defendant has paid only $10,000 towards her pre-sentencing restitution obligation of $20,813.40, as reflected in the letter from the victim's attorney attached here as Exhibit B.[2] To ensure prompt payment of defendant's complete restitution obligation, the government requests that the Court enter a restitution judgment ordering the defendant to provide the full remaining restitution amount during her term of probation.

## **CONCLUSION**

Considering the criteria established by 18 U.S.C. § 3553(a), the government requests that the Court sentence the defendant to a term of probation with full restitution and such other conditions of probation as the Court deems appropriate.

---

[2] Since the government received the restitution letter from the victim's attorney, the defendant has represented to the government that she will make an additional payment of $3,000 before sentencing.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:     /s/
Inayat Delawala
Assistant United States Attorney
Counsel for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700 (phone)
(703) 299-3982 (fax)
inayat.delawala@usdoj.gov

Dated: June 11, 2010

CERTIFICATE OF SERVICE

I certify that on June 11, 2010, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following:

    Thomas C. Carter
    526 King Street, Suite 213
    Alexandria, Virginia 22314

By:    /s/
    Inayat Delawala
    Assistant United States Attorney
    Counsel for the United States
    United States Attorney's Office
    2100 Jamieson Avenue
    Alexandria, Virginia 22314
    (703) 299-3700 (phone)
    (703) 299-3982 (fax)
    inayat.delawala@usdoj.gov