

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:10-cr-00093 (LMB) |
| ANNE MARGRETH BAKILANA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is defendant's Motion to Vacate Plea Agreement. For the reasons explained in this Memorandum Opinion, defendant's motion will be denied with prejudice.

### I. Background

On March 29, 2010, Anne Margreth Bakilana, who had signed a written Plea Agreement, pled guilty to a two-count Criminal Information charging her with knowingly and willfully making two materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the government of the United States, in violation of 18 U.S.C. § 1001(a)(2). The maximum penalties for each such offense are a maximum term of five years imprisonment, a fine of $250,000, full restitution to any victims, a special assessment, and three years of supervised release.

Along with her Plea Agreement, defendant also signed a written Statement of Facts in which she admitted making several false statements to an FBI agent in connection with a federal investigation. In the Statement of Facts, defendant also agreed

that if the case had proceeded to trial, the United States could have proven beyond a reasonable doubt that defendant manipulated the financial assets of a domestic servant in her employ, S.K., by setting up a shared bank account into which she was supposed to pay S.K.'s wages, but from which she in fact withdrew money for her own purposes. Moreover, defendant admitted that she held S.K.'s passport against her will and on one occasion even threatened that S.K. would be returned to her home country of Tanzania if she terminated her employment with the defendant.

As part of her Plea Agreement, defendant agreed that $41,626.80 was due in restitution to S.K., as the "victim of an offense listed in 18 U.S.C. § 3663A(c)(1)(A) that is not the offense of conviction but nonetheless gave rise to this plea agreement." Plea Agreement ¶ 10. Defendant further agreed to deposit $20,813.40 into an escrow account maintained by the victim's attorney no later than ten business days before the date of sentencing, and consented to the entry of a restitution order at sentencing for the full amount of the victim's losses ($41,626.80), with credit for any amount paid before sentencing. Id. The Plea Agreement makes no further reference to payments to S.K., nor does it contain any provision dealing with possible civil suits by S.K. against defendant.

On July 2, 2010, defendant was sentenced to two years supervised probation, with a special condition that she serve one

day in jail, $200 in special assessments, and restitution.

On September 1, 2010, defendant wrote a pro se letter to this Court stating that S.K. had recently filed a civil suit against her for damages, including punitive damages. Defendant's letter alleges that S.K.'s civil claim is one "that we agreed had been fully satisfied with the $41,326.80 [sic] payments." Def.'s Letter of Sept. 1, 2010 ¶ 1. Specifically, defendant claims that when she consented to the Plea Agreement and the restitution amount, she "was informed that the restitution payment would cover everything, and the amount would settle all claims that [S.K.] had against me." Id. ¶ 2. Furthermore, defendant alleges that her understanding was confirmed "when Your Honor asked Mr. Delawaya [sic] [the Assistant United States Attorney] whether the restitution payment included everything, and the Prosecutor responded that yes, the payment included everything." Id.

The Court designated defendant's letter as a Motion to Vacate Plea Agreement, asked for a response from the government, and invited defendant and her counsel to clarify exactly what relief defendant sought from this Court. On September 30, 2010, defendant, through her counsel, filed a response indicating that she seeks the following remedies:

> 1. To work with the Government to amend the plea agreement as follows: i) Charges to be changed to a misdemeanor charge; ii) Separate the two matters of restitution from the false statement charges, keep the plea only on the false statement issue; iii) a fairer description of events in the Statement of Facts,

3

especially the fact that S.K. was paid net wages every month, taxes that she was responsible for were submitted on her behalf and that she kept all the money in her account; iv) To include a note that she paid 47K [sic] and this full amount should be regarded as credit for any claims that she [S.K.] is making in her civil case.

      2. Cancel the remaining probation duration.

Def.'s Resp. to Government's Resp. to Def.'s Letter of September 1, 2010. The government opposes defendant's motion to vacate her plea agreement.

## II. Discussion

To vacate or modify a guilty plea, a defendant must meet the rigorous six-factor test established by the Fourth Circuit in United States v. Moore, 931 F.2d 245 (4th Cir. 1991). In Moore, the Fourth Circuit held that "[u]nder Fed. R. Crim P. 32(d), a defendant does not have an absolute right to withdraw a guilty plea." Id. at 248. Rather, a defendant seeking to alter or withdraw a plea bears the burden of "demonstrating to the district court's satisfaction that a 'fair and just reason' supports [the] request." Id. (quoting United States v. DeFreitas, 865 F.2d 80, 82 (4th Cir. 1989)). In determining whether a defendant has met that burden, the district court may consider a variety of factors, including:

> (1) whether the defendant has offered credible evidence that [her] plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted [her] legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent

counsel, (5) whether withdrawal will cause prejudice to
the government, and (6) whether it will inconvenience the
court and waste judicial resources.

<u>Id.</u> None of those factors alone is dispositive. Rather, the factors are only "balancing considerations" which must be considered and weighed as a whole. <u>Id.</u>

In this case, defendant cannot carry her burden to demonstrate that her plea was invalid or that it should be vacated or modified in any way. At her March 29, 2010 plea hearing, both defendant[1] and her attorney affirmed that she was pleading guilty knowingly and voluntarily. <u>See</u> Tr. of Plea Hr'g at 37-38. Defendant also admitted her culpability for the crimes for which she was charged, and she does not assert her legal innocence now. Moreover, this motion was filed approximately five months after defendant entered her guilty plea, and two months after defendant was sentenced. Although vacating the guilty plea might not cause undue prejudice to the government, it certainly would be a waste of judicial resources, as defendant has already been on supervised probation since her sentencing. Finally, defendant enjoyed the close assistance of extremely competent counsel throughout the plea process, and she stated during her plea colloquy that she was fully satisfied with the way in which her attorney had represented her. <u>Id.</u> at

---

[1] Because the defendant is an exceptionally well-educated woman, holding a Ph.D. in economics, she can be expected to have understood the plea agreement without difficulty.

5

25.

Indeed, defendant's sole argument is that her plea is invalid because she did not understand at the time she signed her Plea Agreement that she might still be subjected to civil liability for her actions against S.K. However, the general rule in the Fourth Circuit is that a defendant "need not be advised of all collateral consequences of [her] plea." Cuthrell v. Dir., Patuxent Inst., 475 F.2d 1364, 1365 (4th Cir. 1973) (finding that a criminal defendant need not be informed that pleading guilty might subject him to later civil commitment); see also United States v. Ayala, 601 F.3d 256, 269 (4th Cir. 2010) (holding that a defendant pleading guilty in state court need not be told that the plea could be used against him in subsequent federal prosecutions).[2] S.K.'s civil lawsuit against defendant, despite arising out of the same conduct that ultimately led to defendant's criminal convictions, is a

---

[2] The Supreme Court recently held in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), that defendants must be advised of the collateral immigration and deportation consequences of their pleas. However, Padilla does not require that defendants be informed of all other collateral consequences of pleading guilty. Indeed, language in the opinion suggests that immigration consequences, because they are so "drastic," are sui generis. Id. at 1478; see also id. at 1480 (concluding that "deportation is an integral part - indeed, sometimes the most important part - of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes"). Potential damages liability in a civil suit by a victim simply does not rise to the same level as deportation in terms of its pervasive effects on a defendant's life. For that reason, the holding in Padilla does not undermine the validity of the plea colloquy in this case.

quintessentially collateral matter to this Plea Agreement. Indeed, the plea agreement was a contract solely between defendant and the United States Attorney's Office for the Eastern District of Virginia. While the victim may have been notified of the pending plea agreement pursuant to 18 U.S.C. § 3771, she was not in any way a party to it, and therefore cannot be bound by its terms.

Accordingly, defendant is incorrect in her contention that the restitution imposed in the Plea Agreement foreclosed all future civil litigation by S.K. The Plea Agreement does not contain any language addressing potential civil lawsuits, nor did the government make any promises or assurances in the language of the agreement itself that the defendant would be immunized from civil suits by S.K. or others. Moreover, during the plea colloquy, defendant herself affirmed on multiple occasions that the written Plea Agreement represented her entire agreement with the government and that she had not been offered any other side deals or promises. See Tr. of Plea Hr'g at 8 (agreeing that she was not promised anything beyond the Plea Agreement itself to waive her objections to venue); id. at 11 (agreeing that she was not promised anything additional in exchange for waiving indictment); id. at 16 (indicating that she had no other side deals with the prosecution and that she understood she could not later object to the terms of the plea

merely because she changed her mind). In response to further questioning by the Court, defendant and her attorney then both explicitly confirmed that the written terms of the plea agreement alone are controlling:

> THE COURT: Now, other than the plea agreement that's in court today, do you have any side deals or side understandings with any federal or state prosecutors, law enforcement people, immigration officials, or anybody at the World Bank concerning this case?
>
> THE DEFENDANT: No, I don't, Your Honor.
>
> THE COURT: Mr. Carter, is that correct?
>
> MR. CARTER: That is correct, Judge. There are no side agreements.
>
> THE COURT: All right. So the plea agreement represents the entire understanding of the parties; is that correct?
>
> DEFENDANT: Yes, Your Honor.

Id. at 16-17. The unmistakable inference to be drawn from those cumulative admissions is that the plea negotiations in this case never included any promise that defendant would be free from future civil litigation by S.K.[3]

Finally, defendant is mistaken in her claim that the prosecuting attorney agreed during the plea colloquy that "yes, the [restitution] payment included everything." Rather, a careful review of the transcript of the plea hearing reveals

---

[3] Indeed, it is unclear how the government would have the authority in this criminal case to take any action precluding civil litigation by a private individual, such as the victim, who was not a party to the Plea Agreement.

that no such statement was ever made. The closest possible statement was an exchange in which Dr. Delawala, the Assistant United States Attorney in this case, stated:

> COURT: Now I'm assuming that there are no Department of Labor or other ramifications for this case that the defendant is possibly facing, is that correct?
>
> MR. DELAWALA: That's correct, Your Honor.

Tr. of Plea Hr'g at 23. However, that exchange occurred in the context of a discussion of future *criminal* prosecution and potential lawsuits by other federal authorities. At no point during that discussion did Mr. Delawala indicate that he was authorized to immunize defendant from civil liability to private third parties like S.K.

For all these reasons, defendant's Motion to Vacate Plea Agreement will be denied with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this 12th day of October, 2010.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge